CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/13/2020
JULIA C. DUDLEY, CLERK
BY:  s/ CARMEN AMOS
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# LYNCHBURG DIVISION

| | |
|---|---|
| **REGINALD C.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:19-cv-00048 |
| | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Reginald C. ("Reginald") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Reginald alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) properly assess Reginald's allegations regarding his symptoms, including his pain, as well as his daily activities; (2) accurately weigh the medical opinion evidence; and (3) find Reginald disabled for at least a closed period.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 15), and **DENYING** Reginald's Motion for Summary Judgment (Dkt. 12). [2]

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Reginald filed a motion to amend his brief, indicating he wanted to correct a few improper citations and typographical errors, as well as redact some "non-material" unnecessary words and sentences, which I granted. Dkt. 14, 17. However, as Reginald did not file any amended brief within the time permitted, I have considered his arguments from his original brief, which I understand to be materially the same, in any case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Reginald failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Reginald filed for DIB in June 2016, claiming that his disability began on February 12, 2016, due to sciatica and rotator cuff tear on his left shoulder. R. 183, 199. Reginald's date last

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

insured is September 30, 2021; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 14; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Reginald's applications at the initial and reconsideration levels of administrative review. R. 58–67, 69–78. On May 15, 2018, ALJ Mary C. Peltzer held a hearing to consider Reginald's claims for DIB. R. 29–56. Counsel represented Reginald at the hearing, which included testimony from vocational expert James Ganoe. On September 20, 2018, the ALJ entered her decision analyzing Reginald's clams under the familiar five-step process[4] and denying his claim for benefits.[5] R. 14–24.

The ALJ found that Reginald was insured at the time of the alleged disability onset and that he suffered from the severe impairments of degenerative disc disease of the lumbar spine, arthrosis of the AC joint and post-operative debridement and bicep tendon release of left shoulder, and osteoarthritis of the left knee.[6] R. 16. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 17. The ALJ specifically considered listing 1.02 (major dysfunction of a joint) and listing 1.04 (disorders of the spine). Id.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Reginald was 51 years old on his alleged onset date, making him a person closely approaching advanced age under the Act. R. 22.

[6] The ALJ determined that Reginald's dysphagia, hypertension, and degenerative joint disease of the thumb and feet were non-severe impairments. R. 16.

3

The ALJ concluded that Reginald retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17. Specifically, Reginald could stand and walk up to four hours per workday, frequently balance, only occasionally push and pull with his left upper and lower extremities, use stairs and ramps, stoop, kneel, and crouch, and be exposed to workplace hazards such as dangerous moving machinery, and could never crawl, use ladders, ropes, or scaffolds, reach overhead with the left upper extremity, or be exposed to unprotected heights. Id. The ALJ determined that Reginald was not capable of performing his past relevant work as a set up operator, press room worker, custodian, or short order cook. R. 22. However, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Reginald could perform, including price marker, garment sorter, and mail clerk (private business). R. 22–23. Thus, the ALJ determined that Reginald was not disabled. R. 23. Reginald appealed the ALJ's decision and the Appeals Council denied his request for review on June 3, 2019. R. 1–4.

## ANALYSIS

Reginald alleges that the ALJ erred by failing to assess properly his allegations regarding his symptoms and daily activities, to weigh accurately the medical opinion evidence, and to find Reginald disabled for at least a closed period.

### A. Medical History Overview

Approximately a year before his alleged onset date, in August 2015 Reginald fell while at work and went to the emergency room complaining of back, shoulder, and knee pain. R. 239. X-rays of the lumbar spine and left shoulder were negative and he was discharged in stable condition. R. 243. However, Reginald continued to have pain, and followed up with Joseph Orchowski, M.D., in September 2015, who referred him for surgical evaluation after an MRI

4

showed a near full thickness rotator cuff tear and a type 2 SLAP tear. R. 393, 396. In February 2016, Reginald saw John Prahinski, M.D., who recommended physical therapy and provided a work note restricting lifting and overhead work. R. 390, 417. Physical therapy did not resolve Reginald's pain complaints, and in May 2016 Dr. Prahinski performed a left shoulder rotator cuff debridement, bicep tendon release, and arthroscopic subacromial decompression. R. 284, 298. Two weeks following surgery, Dr. Prahinski released Reginald to return to work, with postural and lifting limitations, including initially seated work only, and then light work, with no lifting overhead, and no lifting over 10 pounds. R. 299, 549, 583, 560, 590. Reginald also made some progress in physical therapy, though he continued to complain of pain, and in September 2016, he transitioned to a home exercise program. R. 583.

Due to continued complaints of back pain, despite physical therapy and lumbar steroid injections, Dr. Orchowski, referred Reginald for lumbar decompression surgery, which occurred in January 2017. R. 594–95. Following surgery, Reginald continued to complain of pain, and underwent a series of nerve root blocks. R. 499, 601.

1. Medical Opinion Evidence

In September 2016, Reginald presented for a consultative examination with William Humphries, M.D. R. 472–74. Reginald reported significant low back pain and left shoulder pain, and was tender to palpation in the lumbar region and left shoulder. R. 473. Dr. Humphries found Reginald would be limited to sitting, standing, and walking six hours in an eight-hour day, lifting 20 pounds occasionally and 10 pounds frequently, with no climbing, kneeling, or crawling. R. 474. Dr. Humphries also noted that, within six months, Reginald could lift 50 pounds occasionally and 20 pounds frequently, he but would still have restrictions on frequent overhead work. R. 474. The ALJ gave Dr. Humphries' opinion great weight. R. 21.

5

In September and December 2016, respectively, State agency doctors Robert McGuffin, M.D. and Luc Vinh, M.D., reviewed the record and both concluded that Reginald was capable of a limited range of light work, including postural and environmental limitations. R. 63–65, 74–76. The ALJ gave these opinions great weight. R. 21.

**B. Subjective Allegations**

Reginald argues that the ALJ failed to properly analyze his subjective complaints as required by Craig v. Chater, 76 F.3d 585, 594–95 (4th Cir. 1996), including by failing to consider all the required factors and improperly assessing his activities of daily living. The Commissioner counters that the ALJ properly followed the two-step regulatory process, and her assessment of Reginald's subjective symptoms is supported by substantial evidence.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c).[7] First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain.[8] Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to

---

[7] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

[8] SSR 16-3p states that a claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id.

The ALJ's opinion included a detailed discussion of Reginald's medical history, including doctors' visits, imaging, surgery and other treatments, and medical opinions, along with Reginald's allegations. The ALJ adequately supported her finding that Reginald's allegations were not entirely consistent with the objective medical evidence and other evidence in the record.[9] The ALJ specifically noted Reginald's testimony regarding his pain, including his difficulty walking, sitting, lifting, and reaching, and that he is "considering getting a cane." R. 19. However, the ALJ concluded that Reginald's statements regarding the level of his pain and its limiting effects are not entirely consistent with the objective medical evidence, and other evidence in the record. Id. Further, the ALJ noted that Reginald has "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens the reliability of his allegations." R. 21. In support, the ALJ noted that Reginald reported being able to "perform personal care, drive a car, shop in stores, prepare meals, watch his grandchildren, cut the grass with a riding mower, and attend school events. . . ." Id. The ALJ further referenced treatment notes in the record, findings of the state

---

[9] Reginald contends that the ALJ "actually made a negative Step One finding," contrary to the DDS physicians' positive Step One finding. Pl.'s Br. at 8–9, Dkt. 13. However, I find no reversible error, as I note both that the ALJ found Reginald had severe impairments, completing the first step of the Craig analysis, and further "Craig does not require specific findings at Step One where the ALJ progresses to Step Two." Smith v. Astrue, No. 3:09CV488, 2011 WL 1303637, at *4 (W.D.N.C. Mar. 31, 2011), aff'd, 457 F. App'x 326 (4th Cir. 2011).

agency doctors, and the consultative examination, as supporting the RFC, and "not sustain[ing] [Reginald's] limitations." R. 21. Indeed, while the ALJ acknowledged Reginald's consistent complaints of pain, she also noted his progress with physical therapy, reports of improved pain to providers, and multiple occasions he was released by his doctors to return to light work following surgery, with limitations. R. 19–20. Additionally, the ALJ explained that the results of the consultative examination do not fully support Reginald's allegations. R. 20–21.

Reginald suggests that the ALJ did not apply the proper legal standard here, by failing to consider the "seven factors cited in 20 CFR § 404.1529(c)" and, instead, considering, only the first factor, Reginald's daily activities. Pl's Br. at 11, Dkt. 13. This argument is not well taken, as the ALJ specifically acknowledged the factors in 20 CFR § 404.1529(c), and directly thereafter discussed them, including not only Reginald's daily activities, but also his pain, factors that aggravate his pain, and medication and treatment he has undertaken to relieve the pain.[10] R. 18–19.

At bottom, I find the record provides substantial evidence to support the ALJ's decision; thus, the existence of evidence in the record that could support a different decision does not merit reversing the ALJ. Reginald essentially asks me to reweigh the evidence that was before the ALJ and come to a different conclusion. However, it is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ's opinion was thorough and

---

[10] For example, the ALJ noted that Reginald "complained of pain with reaching above shoulder level on the left" and "uses gabapentin, ibuprofen, ice, and stretching to relieve pain." R. 18.

applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Reginald's subjective complaints with substantial evidence, and that Reginald is capable of performing work as found by the ALJ.

### C. Treating Physician's Medical Opinions

Reginald argues that the ALJ erred by failing to resolve a conflict between his treating physicians Drs. Orchowski and Prahinski, and Dr. Humphries. In support, Reginald references a variety of work restrictions imposed on different dates by Drs. Orchowski and Prahinski, releasing Reginald to return to work, but with accommodations including for limited lifting and carrying. Reginald also contends that the ALJ did not "appear[] aware that these doctors were treating physicians." Pl.'s Br. at 17, Dkt. 13. Reginald argues that Dr. Humphries' opinion that in September 2016, Reginald could lift and carry 20 pounds occasionally and 10 pounds frequently, but would be able to lift 50 pounds occasionally and 20 pounds frequently in six months, conflicts with the treating doctors' opinions. The Commissioner counters that the ALJ gave proper weight to the work restrictions assessed by Drs. Orchowski and Prahinski, and to the opinion of Dr. Humphries.

Dr. Orchowski provided several opinions on work restrictions.[11] In September 2015, he indicated that Reginald could perform light work, lifting 20 pounds occasionally and 10 pounds frequently. R. 438. In February 2016, Dr. Orchowski provided a work status note asking that Reginald be permitted to "sit when needed. Standing on his feet for 12 hours is painful for him"

---

[11] To qualify for the treating physician rule, a physician's report must be a "medical opinion." See 20 C.F.R. § 404.1527(c) (discussing treating physician rule in subsection titled "How we consider medical opinions"). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). I find it appropriate to consider Drs. Orchowski and Prahinski's statements in the record about work limitations medical opinions, in that they reflect judgments about what Reginald is still able to do in light of his impairments. However, I also note that the work limitations, on several occasions, reflect his abilities shortly following surgery.

9

and also limited him to no overhead lifting and no lifting over 20 pounds. R. 413, 417. In June and September 2016, he indicated Reginald could return to work, but should avoid overhead work or lifting over 10 pounds. [12] R. 293, 583. Dr. Prahinski provided an opinion on work restrictions in June 2016 and February 2017 that Reginald could return to light work with no overhead lifting, and no lifting over 10 pounds. R. 293, 600. Dr. Humphries, following his consultative examination in September 2016, found that Reginald was capable of a limited range of light work, with exertional limitations including lifting 20 pounds occasionally and ten pounds frequently, and no frequent overhead work. R. 474.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[13] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. The ALJ must give "good reasons" for not affording controlling weight to a treating

---

[12] I note that while Reginald contends Dr. Orchowski provided an opinion on April 11, 2017, that Reginald should remain out of work, the record does not reflect any such work restriction. R. 489. Instead, the record references an earlier evaluation, several months previously, where Reginald was "provided a work note to remain out of work." Id.

[13] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

10

physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion does not deserve controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010). However, the ALJ "need not mechanically discuss every factor when choosing to afford a treating physician's opinion less weight, as long as the ALJ articulates the reasoning behind the decision." Haass v. Comm'r, Soc. Sec. Admin., No. CV BPG-17-1639, 2018 WL 2118705, at *1 (D. Md. Apr. 4, 2018).

Here, the ALJ appropriately considered these factors and the record, in determining that the work restrictions imposed by his treating doctors merited only some weight. The ALJ recognized that the work restrictions were imposed by Reginald's treating doctors, as he discussed each work restriction within the discussion of Reginald's medical history and treatment, and concluded that the work restrictions were "consistent with the record and correspond to [Reginald's] surgical interventions." R. 21. The ALJ then noted that the opinion of Dr. Humphries is "generally consistent with the work restrictions discussed above . . . ." Id. Indeed, the ALJ settled on an RFC that adopted some of the limitations of Drs. Orchowski and Prahinski, including imposing a limited range of light work, with standing and walking limitations, and no overhead reaching with his left hand. R. 17. Of course, the ALJ rejected the

11

limitation endorsed by Dr. Prahinski that Reginald could not lift over 10 pounds, and did not incorporate it into the RFC; however, these restrictions were imposed by Dr. Prahinski at follow-up visits within one week and six weeks of surgery, respectively. R. 293, R. 600. Further, the ALJ did adopt the opinion of Dr. Prahinski that Reginald continued to be capable of a limited range of light work.

The ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the weight afforded with citations to the record and specific reasons, including that the work restrictions were "consistent with the record" and largely correspond to his surgical interventions. Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to give the opinions of Drs. Orchowski and Prahinski some weight, and this weight is adequately explained and is also reflected in the RFC.

### D. Closed Period of Disability

Reginald argues that, "[e]ven if the court finds he was not disabled on the date of the hearing, May 15, 2018" the court should still find he was disabled for "at least the closed period between [his alleged onset date of] February 12, 2016 and April 11, 2017." Pl.'s Br. at 19, Dkt. 13. In support, Reginald cites to a number of medical records he claims show that for this entire period he "was unable to do light work." Id. The Commissioner counters that the ALJ was not required to explicitly address whether Reginald was entitled to a closed period of disability. I agree. The ALJ found Reginald was not disabled at any time from his alleged onset date of February 12, 2016 through the date of her decision, September 20, 2018; implicit in that determination is that Reginald is likewise not entitled to a closed period of disability during that time frame. See Allen v. Colvin, No. CV ADC-16-2557, 2017 WL 2399591, at *5 (D. Md. June 1, 2017) (finding that the ALJ is not required to explicitly deny a closed period of disability

12

where the ALJ's final determination holds claimant is not disabled from the alleged onset date through the date of the ALJ decision) (citations omitted). Accordingly, I conclude that the ALJ's determination is supported by substantial evidence, and that Reginald is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: November 13, 2020

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge